CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALUCIOUS WILLIAMS, JR., | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00672 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| GILBERT, *et al.,* | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., is a Virginia Department of Corrections (VDOC) inmate currently incarcerated in North Carolina pursuant to an Interstate Corrections Compact. Proceeding *pro se*, plaintiff brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison. That suit was severed into several actions, including this one, which alleges claims of excessive force against defendants Gilbert, Collins, Fleming, Woods, Rose, Johnson, and Stanley. (*See* Compl., Dkt. No. 1; Dkt. No. 1-1; Case No. 7:21-cv-222.) Defendants move for summary judgment. (Dkt. No. 19.) For the reasons stated below, this motion will be granted.

I. BACKGROUND

Williams alleges that on February 6, 2021, and on occasions leading up to that date, he was denied the use of a telephone. (Compl. ¶¶ 12–21.) Williams also alleges that he overheard officers and an inmate conspiring to withdraw funds from his inmate account. (*Id.* ¶ 14.) During the evening of February 6, plaintiff covered his window. (*Id.* ¶ 22.) Plaintiff told a correctional officer that if plaintiff received a phone he would uncover the window. (*Id.* ¶ 23.) Between 11:00 p.m. and 12:00 a.m., Sgt. Jones, Lt. Fleming, and Sgt. Bentley were called to plaintiff's

cell.  They administered three sprays of O.C. gas through the chase closet into the vent.  A fourth spray was applied before officers entered the cell.  (*Id.* ¶ 24.)

Rose, Stanley, and Johnson entered the cell, and Williams fell to the floor.  The officers punched Williams in the head, face, and body.  One officer attempted to pull plaintiff's hair out, "violently pulling my hair and yanking my head back."  (*Id.* ¶ 25.)  Williams was cuffed and taken to the shower to be decontaminated.  His clothes were removed, and he was placed in C-3 pod and in four-point restraints.  Williams notified staff that his handcuffs were too tight, and defendants created an "illusion" of readjusting them.  (*Id.* ¶ 27.)

Before being placed in C-301, Williams could smell the stench of mace permeating from the cell and could see where it had been sprayed on the floor, bunk, and sink.  He refused to enter the cell, but Fleming pushed him into the cell.  (*Id.* ¶ 28.)  As the door was closing, Williams heard the nurse speak to Lt. Fleming about the cell, and Fleming stated that "he should have thought about that before he decided to rape someone."  (*Id.* ¶ 29.)  Williams explains that Red Onion staff has attempted to slander him by telling staff and inmates that he is a child molester who molested his little sister and that he is a rapist and a homosexual.  (*Id.* ¶ 30.)

The next morning, between 6:00 a.m. and 7:00 a.m., Williams notified staff that his handcuffs were too tight and were cutting off the circulation in his hands, causing them to swell.  (*Id.* ¶ 31.)  Between 10:20 a.m. and 11:20 a.m., Williams was visited by Cpt. Gilbert, and Williams told him that the handcuffs were too tight and that he could not use the bathroom.  Williams needed to defecate, but he did not have any toilet paper.  Also, Williams could not clean himself afterward because of the improper placement of the handcuffs.  (*Id.* ¶ 32.)

Between 12:00 p.m. and 3:00 p.m., Williams notified Sgt. Phipps that he needed to use the bathroom and was having difficulty because of the handcuff placement.  Also, there was a

policy that he should not be in restraints for longer than four to eight hours.  (*Id.* ¶ 33.)  At approximately 3:30 p.m., after holding his bowels for 17 hours, Williams was forced to relieve himself.  He could not properly wipe himself, and due to the toilet being broken, he remained in the cell with a toilet full of feces for the next three hours.  (*Id.* ¶ 34.)

At approximately 6:30 p.m., Williams was removed from restraints by Sgt. Jones and several officers.  He was visited by a nurse, and he denied any medical issues.  However, he later discovered deep lacerations on his wrists and ankles.  (*Id.* ¶ 35.)

Finally, he also alleges that between October 2020, and January 2021, he was subjected to a device that impedes his ability to think and act appropriately.  (*Id.* ¶ 36.)

**Exhaustion of Administrative Remedies**

In support of their motion for summary judgment, defendants submit the affidavit of C. Vilbrandt, Grievance Coordinator at Red Onion.  (Vilbrandt Aff., Dkt. No. 22.)  Vilbrandt oversees the daily operations of the Inmate Grievance Department at Red Onion.  Defendants' sole argument in favor of summary judgment is that Williams failed to exhaust his administrative remedies under the VDOC's grievance procedure prior to filing this lawsuit.

VDOC records document that Williams was incarcerated at ROSP from October 30, 2017, until October 12, 2021, when he was transferred to Marion Correctional Treatment Center. On December 10, 2021, Williams was transferred back to ROSP where he remained incarcerated until May 16, 2022.  (Vilbrandt Aff. ¶ 4.)

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints and allows corrections officials a means to evaluate potential problems and, if necessary, correct said problems in a timely manner.  (Vilbrandt Aff. ¶ 5, Encl. A.)  Grievable issues include the substance or administration of operating procedures, as well as

3

actions of staff.  Issues pertaining to state and federal laws, regulations, and court decisions are not grievable.  Each inmate is entitled to us the grievance procedure in good faith and reprisals are not imposed upon inmates for such good faith use.  (*Id.* ¶ 6.)

Regular Grievances must be submitted within thirty calendar days from the date of the incident.  Before submitting a regular grievance, an inmate must demonstrate that she made a good faith effort to informally resolve the complaint, which can be done by submitting a written/informal complaint.  Prison staff should respond to the offender's Informal Complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day time period in which an offender may file his Regular Grievance.  If the offender is dissatisfied with the response to the Informal Complaint, the offender may submit a Regular Grievance on the issue.  If he submits a Regular Grievance, he is required to attach the Informal Complaint as documentation of his attempt to resolve the issue informally.  Even if an inmate has not received a response to an Informal Complaint, the inmate must still submit the Regular Grievance within 30 days from the date of the occurrence/incident or discovery of the occurrence/incident.  (Vilbrandt Aff. ¶ 7.)

When filing a formal grievance, the inmate must attach any required documentation of his attempt to informally resolve the issue.  A Regular Grievance should contain one singular grievable issue.  If a regular grievance meets the intake criteria, staff must accept the grievance and log it using the received date.  If the grievance does not meet intake criteria, staff has two working days from receipt to complete the intake section on the grievance indicating the reason for rejection, and to return the grievance to the inmate.  If the inmate disagrees with the intake decision, he has five days to appeal the decision to the Regional Ombudsman.  The decision of the Regional Ombudsman is final.  (*Id.* ¶ 8.)  An inmate must exhaust all requirements of the

4

Offender Grievance Procedure before he can seek judicial relief.  The exhaustion requirement is met only when a Regular Grievance is accepted into the grievance process and appealed through the highest eligible level of appeal without satisfactory resolution of the issue.  (*Id.* ¶ 9.)

Inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. Williams has utilized the grievance procedure during his confinement at ROSP and at other VDOC facilities.  (*Id.* ¶ 10.)

Williams submitted an Informal Complaint (Log No. ROSP-21-INF-00336), dated February 19, 2021, wherein he wrote that "officers and various unknown parties (staff and inmates) conspired to submit money withdrawal form in my name and had funds withdrawn/transferred from my account.  Attempted to deceive me by sending me statements that did not reflect this.  On 02-04-2021 $600 was withdrawn from my account sent to my sister, however, these funds were transferred to another offender account."  ROSP's accountant responded to Williams' complaint on March 1, 2021, and wrote, "All withdrawal forms must be witnessed by a Sgt. or above.  We process only what is sent to our office through proper means". (Vilbrandt Aff. ¶ 12, Encl. B.)

On May 19, 2021, Williams filed an Informal Complaint (Log No. ROSP-21-INF-00917), dated May 17, 2021, wherein he wrote that "several tax forms as well as example sheets were stolen out of my cell . . . ."  "I am filing this complaint due to Red Onion staff obstructing my filing of taxes, grievances, civil suits, and criminal complaints."  Lt. Barton responded on June 2, 2021, and wrote, "No one at Red Onion is obstructing you from filling out any paperwork".  (*Id.* ¶ 13, Encl. C.)  Plaintiff did not submit a Regular Grievance concerning these allegations.  (*Id.* ¶ 14.)

On April 9, 2021, Williams submitted two Informal Complaints (Log Nos. ROSP-21-INF-00060, ROSP-21-INF-00061).  In the first complaint, dated April 7, Williams wrote that "since 06-19-19 Red Onion Staff has denied me of exhausting administrative remedies by intercepting, and circumventing my complaints at the grievance stage, obstructing criminal investigation by pulling other offenders out to pose as me to speak to ACLU of VA."  The complaint received a response on April 24, 2021, that "You are housed in a safe environment and your rights are not being violated."  (Vilbrandt Aff. ¶¶ 17–18, Encl. D.)

In Informal Complaint, Log No. ROSP-21-INF-00661, dated April 7, 2021, Williams wrote, "I am filing this complaint due to an unknown device placed into my body that permits staff to manipulate my thoughts and emotions as well as read and depict them."  On April 24, 2021, S. Fletcher, M. Ed, responded and wrote, "Mr. Williams, you are being treated appropriate according to your MH."  (Vilbrandt ¶ 19, Encl. E.)  Plaintiff did not file a Regular Grievance pursuant to these allegations.  (*Id.* ¶ 20.)

Aside from the Informal Complaints detailed herein, plaintiff did not file any other complaints, informal or regular, pertaining to the allegations in this lawsuit.  (*Id.* ¶¶ 15, 16, 21.)

## II.  ANALYSIS

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the

nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).   A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks.   *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies.   *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).   An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.   *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89.   First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.*   Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*   But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).   Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a).   An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

As detailed herein, Williams did not exhaust his administrative remedies prior to filing this lawsuit.  This is demonstrated by the evidence providing that Vilbrandt conducted a review of Williams' grievance file.  The only attempts by Williams to grieve issues related to the allegations in this complaint were various informal complaints.  Williams did not pursue any Regular Grievances through all applicable levels of appeal.  Thus, Williams did not use "all steps that the agency holds out," and he did not use those steps "properly (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90.

In his response to the argument that Williams did not properly exhaust available administrative remedies, Williams asserts that he was "heavily under the influence of a chemical agent" or "unknown device that was planted on his person" so he "could not thoroughly follow up with these complaints, rendering his administrative remedies unavailable."  (Dkt. No. 38 at 3 of 11.)  Plaintiff maintains that his "vision is altered at times and I find myself reciting the recordings as they are playing creating the illusion of me talking to myself and I am indecisive."  (*Id.* at 7 of 11.)  Plaintiff also claims that legal documents were stolen from his cell, and defendants intercepted his mail and tried to "intimidate" him with "physical force."  (*Id.* at 5 of 11.)  These unsworn assertions and fanciful allegations are insufficient to defeat summary judgment.  It is "well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment," and that "unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment."  *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 798–99 (D. Md. 2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)).  Because submitting "an affidavit in compliance with Rule

56(e) is not an onerous task," *id.* at 799, the court will not consider the unsworn evidence.[1]

Moreover, Williams' assertions are belied by the undisputed evidence that Williams had access to the grievance procedure and took advantage of the procedure on several occasions. Williams lacks a sufficient justification for his failure to exhaust the claims in this case prior to filing suit.  Therefore, Williams' suit is barred by the PLRA, and defendants are entitled to summary judgment.  *See, e.g.*, *Tracey v. Kirkland Corr. Inst.*, Civil Action No. 1:12-cv-01614-JMC, 2013 WL 3049410, at *4 (D.S.C. June 17, 2013) (finding that defendant is entitled to summary judgment on exhaustion issue where "a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation" and plaintiff's "vague and general allegations" that grievance forms were "not readily available" are "insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims").

## III.  CONCLUSION

For these reasons, the court will issue an appropriate order granting the motion for summary judgment and entering final judgment in this matter.

Entered: March 24, 2024.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge

---

[1]  The court recognizes that in his verified complaint, Williams asserts generally that he was "denied of informal complaints and grievances."  (Compl. ¶ 36.)  This bald assertion is not enough to create an issue of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see also Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment.  He has to provide a basis for his statement.  To hold otherwise would render motions for summary judgment a nullity").